UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARIUS ROGERS,

                Plaintiff,

-against-

THE CITY OF NEW ROCHELLE;
NICOLAS COLLADO; MICHAEL TETTEY;
BRITTAN LEBRON; NEW ROCHELLE
POLICE COMMISSIONER JOHN DOE,

                Defendants.

1:19-CV-0479 (CM)

ORDER TO AMEND

COLLEEN McMAHON, Chief United States District Judge:

Plaintiff, currently incarcerated in the Clinton Correctional Facility, brings this *pro se* action under 42 U.S.C. § 1983, seeking damages. He sues the City of New Rochelle, Nicolas Collado, Michael Tettey, Brittany Lebron, and the Police Commissioner of the City of New Rochelle. He alleges that the defendants have violated his federal constitutional rights. By order dated October 15, 2019, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis*.[1] For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within sixty days of the date of this order.

## STANDARD OF REVIEW

The Court must dismiss a complaint, or portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint, or portion thereof, when

---

[1] Plaintiff filed his complaint while he was held in the Westchester County Jail. Prisoners are not exempt from paying the full filing fee, even when they have been granted permission to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(b)(1).

the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original).

**BACKGROUND**

Plaintiff alleges the following facts: On July 2, 2018, Plaintiff went to Collado's New Rochelle apartment to buy marijuana. When he arrived there, Lebron greeted him and asked him how much marijuana he wanted to buy. He told her that he wanted to buy an eighth of an ounce, and he complained that the last time that he had bought marijuana from Collado, he "had shorted him." (ECF 2, p. 4.) Lebron told Plaintiff that she was going to call Collado. Collado arrived and Plaintiff again complained about his previous purchase. He told Collado that he wanted to buy an eighth of an ounce of marijuana. Collado then went into another room to prepare Plaintiff's order.

Collado then shouted from the other room, "Whose been in here? I'm missing some shit!" (*Id.*) Lebron told Collado that Plaintiff had been the only person who had been in that room. Collado then asked Plaintiff, "You know I work with the New Rochelle Police Department, and you're trying to steal from me?" (*Id.* p. 4-5.) Collado told Lebron to get his "chrome revolver" and told Tettey, who was also there, to get his shotgun. (*Id.* p. 5.) Lebron gave Collado the revolver and Collado told Plaintiff to empty his pockets; Plaintiff complied. Collado attempted to fire a shot at Plaintiff, but his revolver misfired. Plaintiff then ran into the apartment's bathroom. Collado grabbed the shotgun and fired at Plaintiff, "causing Plaintiff to lose his third and fourth crown, neck of his metacarpal, and both phlangels." (*Id.*) Plaintiff was taken to a hospital. "[B]ut his [two] fingers could not be saved." (*Id.*)

For three years Collado, Lebron, and Tettey were selling illegal drugs from that apartment "with[] impunity as they were acting as agents [and] informants for the New Rochelle Police Department." (*Id.*) "[T]hey were given . . . free reign to sell narcotics[] and possess multiple high powered firearms[] that were transported across state lines[] in consideration for valuable information against their connections[] and other notorious[] violent drug dealers in the City of New Rochelle and/or Westchester County." (*Id.* p. 5-6.) Though the City of New Rochelle is aware of their actions, it has failed "to intervene and/or protect the residents of the City of New Rochelle" from them. (*Id.* p. 6.) New Rochelle's Police Commissioner is "fully aware" of their actions and has "authorized" them "to 'silently' act as agents [and] informants of" New Rochelle's police department. (*Id.*) The Police Commissioner allows them to posses their weapons and sell narcotics "to maintain a certain image[] that would allure drug dealers[] and [other] criminals to their circle in hopes of [the police] apprehending" those criminals that they attract. (*Id.*) Collado, Lebron, and Tettey "have assisted the City of New Rochelle Police Department in over 200 undercover Police investigations[] that have resulted in over 200 arrests." (*Id.* at p. 7.)

## DISCUSSION

### A. Failure to enforce the law

The Court construes Plaintiff's complaint as asserting claims against the Police Commissioner under 42 U.S.C. § 1983 that he has violated Plaintiff's federal constitutional rights by failing to enforce laws. The Court must dismiss those claims because there is no federal constitutional duty on the part of government officials to enforce laws. *See* § 28 U.S.C. 1915(e)(2)(B)(ii); *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 755-56 (2005); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994).

B. **State action**

Plaintiff must amend his claims under 42 U.S.C. § 1983 against Collado, Lebron, and Tettey. A claim for relief under § 1983 must allege facts showing that the defendant violated the plaintiff's federal constitutional right by acting under the color of a state "statute, ordinance, regulation, custom or usage." "Because the United States Constitution regulates only the Government, not private parties, [in a claim brought under § 1983,] a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action."[2] *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted).

A private party's actions can be considered state action in three situations: (1) the private party acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (2) the private party willfully participates in joint activity with the state or its functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) the state has delegated a public function to the private party (the "public function" test). *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citation omitted). The fundamental question under each test is whether the private party's challenged actions are "fairly attributable" to the state. *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). "[A] State normally can be held responsible for a private decision . . . when it has . . . provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). But the State's "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives." *Id.* at 1004-05. And a being police informant does not, by itself, make a person a

---

[2] References to state action include municipal (city) action.

4

state actor. *See Ginsberg v. Healy Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999) ("[An appellee's] provision of background information to a police officer does not by itself make [that appellee] a joint participant in state action under Section 1983."); *see also Shapiro v. City of Glen Cove*, 236 F. App'x 645, 647 (2d Cir. 1997) (summary order) ("[N]o evidence supports [the appellant's] contention that [an informant] acted jointly with the [municipal officials] to deprive her of her constitutional rights, and ample evidence shows that the [municipal] officials who searched her house exercised independent judgment rather than acting at [the informant's] direction." (citing *Ginsburg*, 189 F.3d at 271-72))). *But see DiNicola v. DiPaolo*, 945 F. Supp. 848, 857 (W.D. Pa. 1996) ("Several federal courts have recognized that a police informant may be considered a 'state actor' for purposes of § 1983 liability if the informant acts in an investigatory capacity at the direction of or under the supervision of governmental authorities and if there is a nexus between the informant's activities and the activities of the authorities themselves.") (citations omitted).

Collado, Lebron, and Tettey are private parties. Plaintiff does not allege sufficient facts to suggest that any of them have acted as a state actor. He asserts that they have acted as police informants, but that alone does not constitute state action. He also asserts that Collado has admitted to "working" with New Rochelle's police department, and that the City of New Rochelle and its Police Commissioner are aware of the illegal activity of Collado, Lebron, and Tettey, and allow them to engage in this activity to attract other criminals for the purpose of apprehending those criminals. (ECF 2, p.4, 6.) But neither the City's nor the Police Commissioner's approval of or acquiescence to Collado's, Lebron's, or Tettey's illegal activities causes Collado, Lebron, or Tettey to become state actors. The Court therefore grants Plaintiff

5

leave to file an amended complaint in which he alleges sufficient facts to suggest that Collado, Lebron, or Tettey have acted as state actors for the purpose of § 1983 liability.

### C. Municipal liability

Plaintiff must also amend his claims against the City of New Rochelle. When a plaintiff sues a municipality under 42 U.S.C. § 1983, such as the City of New Rochelle, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. "[A] municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (second alteration in original)). "Only then can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983." *Id.* (quoting

*Harris*, 489 U.S. at 389) (internal quotation marks omitted). A plaintiff can allege deliberate indifference in this context by asserting facts suggesting that:

> [1] a policymaker knows to a moral certainty that city employees will confront a particular situation; [2] the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation; and [3] the wrong choice by the city employee will frequently cause the deprivation of a citizen's [federally protected] rights.

*Wray v. City of New York*, 490 F.3d 189, 195-96 (2d Cir. 2007) (internal quotation marks and citation omitted).

Plaintiff, without any supporting facts, asserts that the City of New Rochelle is liable under § 1983 because it has failed to "adequately train and supervise its employees," and that its failure to do so has caused him "to suffer life changing injuries from the real threat[] that was created by [the] New Rochelle Police Department." (ECF 2, p. 9.) These allegations are insufficient to state a § 1983 claim against the City of Rochelle. The Court therefore grants Plaintiff leave to amend his complaint to include sufficient facts to state such a claim.

## LEAVE TO AMEND

The Court grants Plaintiff leave to amend his complaint to detail his claims. In his amended complaint's statement of claim, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. The Court also directs Plaintiff to provide the addresses for any named defendants. To the greatest extent possible, Plaintiff's amended complaint must:

a) give the names and titles of all relevant persons;

b) describe all relevant events, stating the facts that support Plaintiff's case, including what each defendant did or failed to do;

c) give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

d) give the location where each relevant event occurred;

7

e) describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

f) state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

Essentially, the body of Plaintiff's amended complaint must tell the Court: *who* violated his federally protected rights; *what* facts show that his federally protected rights were violated; *when* such violation occurred; *where* such violation occurred; and *why* Plaintiff is entitled to relief. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint. Plaintiff must not reassert in his amended complaint claims that the Court has dismissed in this action.

**CONCLUSION**

The Court directs the Clerk of Court to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket. The Court grants Plaintiff leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 19-CV-0479 (CM). An Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the Court will dismiss this action for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Court also directs the Clerk of Court to docket this order as a "written opinion" within the meaning of Section 205(a)(5) of the E-Government Act of 2002.

SO ORDERED.

Dated: October 25, 2019
       New York, New York

_____
COLLEEN McMAHON
Chief United States District Judge